**UNITED STATES of America,**

v.

**Parrah GARCIA, Defendant.**

**No. 00 CR. 1070(RWS).**

United States District Court,
S.D. New York.

April 17, 2001.

Jonathan Kolodner, U.S. Atty., Criminal Div., New York, NY, for United States.

Jonathan Bach, Federal Defenders Service Unit, New York, NY, for Defendant.

*SENTENCING OPINION*

SWEET, District Judge.

Defendant Parrah Garcia ("Garcia") pled guilty on December 8, 2000 to one count of illegal reentry into the United States by a deported alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). Although Garcia's illegal reentry had been apparent since January 3, 2000, when he was arrested on two counts of passport fraud, he was not charged with the instant offense until October 6, 2000, soon after he completed nine-month passport fraud sentence. As set forth more fully below, the government's delay in prosecuting Garcia for illegal reentry significantly enhances his applicable sentencing range pursuant to the United States Sentencing Guidelines ("the Guidelines").

Since the two offenses were apparent at the same time, Garcia should not be additionally penalized as a result of the government's delayed prosecution. Garcia will be sentenced to 35 months of imprisonment, to be followed by a three-year term of supervised release, pursuant to 18 U.S.C. § 3583(b)(2). A special assessment of $100 is mandatory. 18 U.S.C. § 3563(a)(2).

**The Defendant**

Garcia was born in the Dominican Republic in 1957. He and his two siblings grew up there, supported by their parents, Andre Parra, a machine operator, and Candida Garcia, who worked in a hospital. Garcia's father died approximately twenty years ago, and his mother still resides in the Dominican Republic.

Records from the Immigration and Naturalization Service ("INS") indicate that Garcia entered the United States through

New York on February 1, 1980, and again on December 8, 1982. He married Maria Guttierez ("Guttierrez") in December of 1981. Although the relationship ended fifteen years later, Garcia is still close with Guttierez and their now-eighteen year old daughter, Elizabeth, who live together in Manhattan.

On October 6, 1983, Garcia was sentenced to a one to three year term of imprisonment for third degree criminal facilitation and first degree possession of stolen property by the New York County Supreme Court. He was released on parole on September 13, 1984 and discharged two years later.

On December 29, 1992, Garcia was sentenced to a four and a half to nine year term of incarceration for first degree robbery, after forcibly entering an apartment, tying up and threatening its occupant, and stealing jewelry and cash with three accomplices. He was conditionally released to an INS detainer on September 16, 1997 and deported on December 7, 1997.

Meanwhile, Garcia had married Theresa Irizzary ("Irizzary") while incarcerated in October of 1996. Irizzary and their seventeen year-old son, Jose, live together in Manhattan.

Garcia, using the name Juan Ramon Collazo, signed a passport application on November 1, 1999, and submitted it to the Manhattanville Post Office. The application was referred to the Fraud Program Manager of the New York Passport Agency, which initiated an investigation. Pursuant to the New York Passport Agency's request, the Social Security Administration determined that Juan Ramon Collazo had died in November of 1999. Garcia was arrested on January 3, 2000 after attempting to pick up the Collazzo passport from the New York Passport Agency on Hudson Street in Manhattan, and was subsequently charged with a second passport fraud offense for submitting another passport application on September 27, 1999 under the same alias.

Garcia pled guilty to two counts of passport fraud before the Honorable Victor Marrera on March 6, 2000. *See* 00 Cr. 0037(VM). Pursuant to his plea agreement, Garcia served two concurrent nine-month terms of imprisonment.

Although his rap sheet had clearly indicated that he was a deported alien when he was arrested on the passport fraud charges, Garcia was not charged on the instant offense of illegal reentry until October 6, 2000, days after he completed his nine-month sentence. Garcia pled guilty on December 8, 2000.

Garcia's plea agreement stipulated to an applicable sentence under the Guidelines of 57–71 months, but allowed the defense to seek a downward departure "based on the Government's delay in prosecuting this case, and to argue that he should be sentenced as if his sentence on the illegal reentry charge were being imposed at the same time as the sentence on the passport fraud charge." The government agreed not to oppose the motion.

### The Guidelines

The Presentence Report ("PSR") prepared by the United States Probation Office grades Garcia's conduct at a base offense level of 8 under the Guidelines, to which 16 points are added due to Garcia's previous aggravated felony conviction. *See* U.S.S.G. § 2L1.2(a), (b)(1)(A). From the adjusted offense level of 24, three points are subtracted for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b)(2), leaving a total offense level of 21.

The PSR allocates three criminal history points for Garcia's 1992 robbery conviction pursuant to Guidelines § 4A1.1(a), and two criminal history points for the passport

fraud conviction pursuant to § 4A1.1(b). Two additional points are added because Garcia was on parole when the instant offense was committed. *See* U.S.S.G. § 4A1.1(d). As a result, Garcia has a total of seven criminal history points, which translates into a Criminal History Category of IV.

The applicable Guideline range for a defendant with a total offense level of 21 and a Criminal History Category of IV is 57 to 71 months.

### Downward Departure

Counsel for Garcia has argued that Garcia should be sentenced as though he were being sentenced at the same time as he was sentenced on the passport fraud charges as a result of the government's delay in prosecution. *See, e.g., United States v. O'Hagan,* 139 F.3d 641, 656–58 (8th Cir.1998) (affirming downward departure for delay in prosecution); *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 563–64 (9th Cir.1998) (same); *United States v. Saldana,* 109 F.3d 100, 104 (1st Cir.1997) (departure appropriate for preindictment delay, even if unintentional, if it produces an unfair or unusual sentencing result); *United States v. Martinez,* 77 F.3d 332, 336–37 (9th Cir.1996) (departure available where second indictment for groupable offenses was delayed); *United States v. Blackwell,* 49 F.3d 1232, 1241–42 (7th Cir.1995) (authorizing downward departure to achieve the effect of concurrency with a fully discharged sentence).

In order to do so, the Court must take account of two factors that enhanced Garcia's recommended Guideline range due to the delay. First, the two criminal history points added for the passport fraud charges would not have applied if Garcia had been sentenced for both offenses at once, which would have reduced Garcia's Criminal History Category to III.[1] The applicable Guideline range for a defendant with an offense level of 21 and a Criminal History Category of III is 46–57 months.

Due to the delay in prosecution, Garcia has already completed his sentence for passport fraud, and therefore cannot receive credit for those nine months, as he would have if sentenced on both offenses at the same time. In order to alleviate the result of the delay, Garcia's sentence under the already adjusted Guidelines range should be reduced by nine months. *See, e.g., United States v. Londono–Jimenez,* No. 99 CR. 81–01(RWS), 2000 WL 1593381, *4 (S.D.N.Y. Oct. 25, 2000) (noting that the Second Circuit has not ruled on whether a downward departure may be granted based on a lost opportunity to serve concurrent sentences, but finding that delay in indictment that "create[d] an unwarranted disparity in the sentence" was out of the heartland and therefore justified departure pursuant to Guidelines § 5K2.0). *Cf. United States v. Montez–Gaviria,* 163 F.3d 697, 701 (2d Cir.1998) (where defendant was detained by the state during delay in transfer to federal custody, "nothing in the Sentencing Guidelines precludes the district court from departing downward under § 5K2.0 on the basis of [the defendant's] uncredited time served in state custody"); *United States v. Ogbondah,* 16 F.3d 498, 501 (2d Cir.1994) (remanding to district court because departure on the grounds of uncredited incarceration due to a bureaucratic confusion was within sentencing court's authority).

---

1. The offense level would not have been affected if the two cases had been prosecuted together, because the offense level for passport fraud is eight, the offense level for illegal reentry is 24, and the Guidelines provide that an offense that is nine or more levels less serious than the offense with the higher offense level "will not increase the applicable offense level." U.S.S.G. § 3D1.4(c).

A sentence at the lowest end of the applicable Guideline range, 46 months, subtracting the nine "lost" months would result in a 35–month sentence.

### The Sentence

In order to sentence him as though he were being sentenced for this offense and the passport fraud at the same time, Garcia is hereby sentenced to 35 months of incarceration, to be followed by a three-year term of supervised release pursuant to 18 U.S.C. § 3583(b)(2) and Guidelines § 5D1.1(a). Supervision shall be in the district of residence.

Garcia shall observe all mandatory and standard supervised release conditions, including that he shall not: (1) commit another federal, state or local crime; (2) illegally possess a controlled substance; or (3) possess a firearm or destructive device. As the PSR reflects that Garcia poses a low risk of substance abuse, the drug testing requirements of the Violent Crime Control and Law Enforcement Act of 1994 are waived.

In addition, the following special conditions shall apply: (1) Garcia shall not illegally reenter the United States during the period of supervised release; and (2) Garcia shall comply with the directives of the Immigration and Naturalization Service and the Immigration Laws.

Garcia shall report to the nearest Probation Office within 72 hours of release from custody.

In light of Garcia's inability to pay, no fine shall be imposed. However, Garcia shall pay the mandatory $100 fine pursuant to 18 U.S.C. § 3013, which is due immediately.

It is so ordered.