[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15445
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-00238-JEC-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR CABELLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 16, 2011)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Hector Cabello appeals his 46-month, low-end guideline sentence for illegal

reentry into the United States, in violation of 8 U.S.C. § 1326(a), (b)(2).  He

argues that his sentence is substantively unreasonable, particularly in light of the amount of time he had already served in state court for violating his probation in another case by committing the instant offense. For the reasons set forth below, we affirm.

I.

In 1997, Cabello was convicted of child molestation in Gwinnett County, Georgia. He was deported in April 1999, and he immediately reentered the United States without applying for or receiving permission from the government. He was found in the United States in 2006 and taken into state custody. The Gwinnett County court revoked his probation in 2007 for (1) being in the United States illegally, (2) failing to obtain sex-offender evaluation or treatment as ordered by the court, and (3) being in arrears on his probation supervision fee. He was incarcerated until April 5, 2010, and arrived the next day at the Gwinnett County Sex Offender Registry Office in order to register as a sex offender. The Immigration and Customs Enforcement ("ICE") agent on duty was notified that Cabello was an illegal alien, and Cabello was taken into federal custody.

Cabello pled guilty to entering the United States without permission after having previously been deported, in violation of 8 U.S.C. § 1326(a), (b)(2). In calculating his guideline sentencing range, the probation office assigned a base

offense level of 8, pursuant to U.S.S.G. § 2L1.2, and added 16 levels pursuant to § 2L1.2(b)(1)(A) because he previously was deported subsequent to an aggravated felony. With a 3-level reduction for acceptance of responsibility, he had a total offense level of 21. In light of the child-molestation conviction and the fact that he was on parole for that offense when he reentered the United States, Cabello had five criminal-history points, which placed him in criminal history category III. He was subject to a statutory maximum sentence of 20 years' imprisonment and a guideline range of 46-57 months' imprisonment.

Cabello objected that the child-molestation conviction was obtained in violation of *Padilla v. Kentucky*, 559 U.S. __, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010) (holding that defense counsel must advise noncitizen client of immigration consequences of conviction), and, thus, it should not contribute to his offense level or his criminal-history score. He added that he was innocent of the child-molestation charge and had only pled to it under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). He further objected that he should receive a sentence of time served, as (1) his only prior felony conviction was obtained in violation of *Padilla* and (2) he had already spent close to four years in state and federal custody after his probation was revoked.

At the sentencing hearing, Cabello introduced an affidavit from his attorney

3

in the child-molestation case, which noted that the attorney did not advise Cabello of the possibility of deportation if he entered a *nolo contendere* plea. He also introduced an affidavit from his ex-wife, who was the mother of the victim, stating her belief that the accusation against Cabello was false. He argued that he had entered an *Alford* plea because he thought that he would be in custody for only "a little bit of time," then would be released on probation. He argued that the prior conviction should not be included in his guideline calculations due to the *Padilla* violation, and that if the court did include it, the *Padilla* violation should be considered among the grounds for a variance.

As to the 18 U.S.C. § 3553(a) factors, Cabello noted that the federal government found him in state custody in September 2006, but he was not arrested and indicted on the instant charges until April 2010, after he was released on parole from state custody. He stated that other circuits have held that such a delay may be grounds for a sentencing variance and that credit may be awarded for time served in state custody. Cabello had spent over 42 months in state custody before going directly into federal custody, meaning that he had been incarcerated for a total of 49 months and 24 days as of the date of the hearing. This number, he asserted, exceeded the low end of his guideline range. As the parole violation was triggered by the illegal reentry, he argued that the state had already punished him

4

for the instant conduct.

Cabello further noted that, when his ex-wife learned that he was in federal custody, she called counsel to say that her sister had made the molestation allegations out of anger at Cabello. She expressed her regret for not trying to defend Cabello at the time. Cabello also introduced a letter of support from his current wife, who recently had moved to Mexico with their three children. He stated that his wife and their children all were United States citizens, but they were remaining in Mexico to await Cabello's return.

He argued that he had been in the United States from 1999 to 2006, during which time he married, had children, worked in construction and painting, purchased some equipment for his trade, and stayed out of trouble. His family took his equipment with them when they moved to Mexico, so that he can establish himself there as soon as he is deported.

The government introduced a letter from the state prosecutor in the molestation case, who said that Cabello had not shown remorse and alleged that Cabello had "terrorized" his then-wife and her children. It also noted that Cabello was found by law enforcement when he was arrested in 2006 on a later-dismissed charge of loitering for sex. Cabello argued that the evidence in the child-molestation case did not clearly indicate that a sexual act had been committed, and

that the allegation that he "terrorized" the family was based on a false accusation by his then-wife's sister. He apologized to the court for having returned to the United States, indicated that he understood his situation and that it would not happen again, and assured the court that he wanted to go back to his family and his country.

The court overruled the objections to the guideline calculations. As to the § 3553(a) factors, it appeared to the court that Gwinnett County had imposed a substantive sentence based on both Cabello's reentry and the technical violations, and that, even though the loitering-for-sex offense was not the basis for the revocation, the Gwinnett County judge probably was aware that it was "not good" for Cabello to have been arrested on a second sex-related offense. Nevertheless, the district court recognized that it could impose a separate sentence for the instant illegal-reentry offense. It found that the child-molestation offense was "quite serious," that the letter from the state prosecutor indicated that Cabello showed no remorse and had a history of terrorizing his family, and that corroborating evidence indicated sexual contact with the child. The court further found that the ex-wife's affidavit was not extraordinary enough to cause the court to ignore the conviction. It also noted that Cabello appeared to be affluent by Mexican standards, so there was no particular reason that he needed to come back to the

6

United States after his deportation.

As for whether the Gwinnett County conviction served as sufficient punishment, the court stated, "I don't think it's right[,] just because a county actually takes seriously this kind of violation[,] that we ignore it . . . ." Returning to the country after a child-molestation conviction was very serious. It suggested a danger to children or other people and a total disregard for the law. The court feared that Cabello would return to the United States again, and it had found that the only adequate deterrence in such cases is a long sentence, in excess of two or three years, in order to impress upon the defendants that coming back to the country "will be really unpleasant." The court concluded that the record and the § 3553(a) factors warranted a sentence in addition to whatever he might already have served for the probation violation.

The court imposed a low-end guideline sentence of 46 months' imprisonment, with credit for the time Cabello had served since being taken into custody by ICE in April 2010, followed by 3 years' supervised release.

II.

We review a sentence for substantive reasonableness under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). We will reverse a sentence under

7

that standard only if the district court has made a clear error of judgment. *Id.* at 1189. When conducting this review, we take into account the totality of the facts and circumstances, including the extent of any variance from the guideline range. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). We will not reverse merely because we believe that a different sentence might have been more appropriate. *Irey*, 612 F.3d at 1191. Although we do not apply a presumption of reasonableness to a within-guideline sentence, "ordinarily we would expect a sentence within the Guidelines range to be reasonable." *United States v. Talley*, 431 F.3d 784, 787-88 (11th Cir. 2005). The appellant bears the burden of establishing that the sentence is unreasonable. *Id.* at 788.

After *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), sentencing is a two-step process that requires the district court first to "consult the Guidelines and correctly calculate the range provided by the Guidelines," then to consider the factors in 18 U.S.C. § 3553(a) and determine a reasonable sentence. *Talley*, 431 F.3d at 786. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant

8

with training or medical care; (6) the kinds of sentences available; (7) the sentencing guideline range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id.* (discussing § 3553(a)). The sentence must be sufficient, but no greater than necessary, to punish, deter, protect the public, and provide the training and care outlined in the statute. § 3553(a).

The district court commits a clear error of judgment if it weighs the § 3553(a) factors unreasonably, thus arriving at a sentence that does not achieve the statutory purposes of sentencing. *Irey*, 612 F.3d at 1189. The court may also abuse its discretion by failing to consider relevant factors that were due significant weight, or by giving significant weight to an improper or irrelevant factor. *Id.*

As a policy statement, Application Note 3(C) to U.S.S.G. § 5G1.3 states, "in cases in which the defendant was on federal or state probation . . . at the time of the instant offense and has had such probation . . . revoked[,] . . . the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." § 5G1.3(c) & comment. (n.3(C)).

In *United States v. Morales-Castillo*, 314 F.3d 561, 562 (11th Cir. 2002), the district court ordered a sentence for an illegal-reentry offense to run consecutively to a state sentence for a probation revocation that was based on the

same illegal reentry. We held that the district court's decision was proper under § 5G1.3(c) and Application Note 6, the predecessor to Note 3(C), and that the court had appropriately recognized its discretion to choose between consecutive and concurrent sentencing. *See id.* at 564. This holding is consistent with the Ninth and Fifth Circuit cases relied upon by Cabello, both of which held merely that the district courts have discretion, under appropriate circumstances, to grant downward departures in order to account for time served in state custody or for the "lost opportunity" for concurrent sentencing. *See United States v. Barrera-Saucedo*, 385 F.3d 533, 536-37 (5th Cir. 2004); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563-64, 563 n.14 (9th Cir. 1998) (*en banc*).

Here, the district court carefully considered the § 3553(a) factors, particularly Cabello's background and criminal history. The court expressed concern at the serious nature of the child-molestation offense and the fact that Cabello was arrested for another sex-related offense in 2006. It described the need to protect children and others from future offenses, and it found that Cabello had shown a total disregard for the law. It noted the state prosecutor's assertions that Cabello had "terrorized" his first wife and her family. It also discussed the need for adequate deterrence through a lengthier sentence. As to the probation-revocation issue, the court found that the state sentence came about largely

10

because of the illegal-reentry offense and that the state court would have considered Cabello's later loitering-for-sex arrest, but it also acknowledged that it had the option of imposing the federal sentence to run consecutively to the state sentence. The district court ultimately concluded that the § 3553(a) factors warranted a sentence of imprisonment in addition to the term Cabello had already served in state court for the probation violation.

Thus, the record indicates that the court carefully weighed the § 3553(a) factors and the circumstances of the state sentence before reasonably determining that a low-end guideline sentence, without credit for time served in state custody, was necessary and sufficient to achieve the statutory purposes of sentencing. *See Irey*, 612 F.3d at 1189; *Talley*, 431 F.3d at 786. It did not weigh these factors unreasonably or otherwise make a clear error of judgment. *See* § 5G1.3, comment. (n.3(C)); *Irey*, 612 F.3d at 1189; *Morales-Castillo*, 314 F.3d at 564. Therefore, Cabello has not shown that the court abused its discretion in imposing the 46-month sentence. *See Irey*, 612 F.3d at 1188.

For the foregoing reasons, we affirm Cabello's sentence.

**AFFIRMED.**