**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Luis LOPEZ–ZAMORA,
Defendant–Appellant.**

No. 03–50304.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2004.

Filed Dec. 29, 2004.

Mazda K. Antia, Cooley Godward LLP, San Diego, CA, for the appellant.

Kyle W. Hoffman and Karl A. Sandoval, U.S. Attorney's Office, San Diego, CA, for the appellee.

Before: TASHIMA, McKEOWN, and BYBEE, Circuit Judges.

McKEOWN, Circuit Judge:

For the second time, Jose Luis Lopez–Zamora appeals his sentence for attempted entry into the United States after having been deported. Prior to Lopez–Zamora's second sentencing hearing, he sought downward departures on multiple grounds. The district court granted a downward departure for over-representation of criminal history. Lopez–Zamora contends that the district court erred by not recognizing its discretion to grant a separate departure based on the minor nature of the underlying offense. This argument implicates the inter-play among three versions of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2L1.2(b)(1)(A)—the 1995, 1997, and 2001 versions. We must decide whether the 2001 Guideline amendments categorically forbid a district court from departing due to the minor nature of the underlying felony. We hold that they do not, but we affirm because the claimed error did not affect the sentence imposed.

## I. BACKGROUND

In 2001, Lopez–Zamora pled guilty to attempted reentry to the United States in violation of 8 U.S.C. § 1326. Based on a prior conviction for selling methamphetamine to an undercover officer, Lopez–Zamora qualified for a 16–level enhancement to his base offense level, netting a sentencing range of 70 to 87 months. The district court denied Lopez–Zamora's motions for departures based on cultural assimilation and extraordinary family circumstances, but granted him a departure for over-representation of criminal history. The judge reasoned: "in proportion to others in this district, . . . the 70 months is excessive; and therefore, I am going to reduce the criminal history category from a five to a four." Relative to "many other people that have come before me, . . . this amount of sentence is quite high." The judge explained his denial of the other departures stating "there really is no legal basis for a further departure, as much as I do think the sentence is quite high." The reduction of Lopez–Zamora's criminal history brought the sentencing range down to 57 to 71 months. The judge sentenced him to 57 months of imprisonment and three years of supervised release.

On appeal, we vacated the sentence and remanded for resentencing because the evidence "was insufficient to establish that Lopez was actually convicted of a drug trafficking offense, as opposed to mere solicitation." *United States v. Lopez–Zamora*, 61 Fed.Appx. 401, 401 (9th Cir. 2003).

Shortly before his second sentencing hearing in 2003, Lopez–Zamora submitted a new motion for downward departures. He reiterated his prior arguments and added two new grounds: his offer to stipulate to deportation; and a departure pursuant to *United States v. Sanchez–Rodriguez*, 161 F.3d 556 (9th Cir.1998) (en banc), because his prior drug conviction for attempting to sell a tenth of a gram of methamphetamine for $20 was too minor

to justify a 16–level enhancement under the Guidelines.

After the government produced a transcript of Lopez–Zamora's 1994 guilty plea, the district court found there was sufficient evidence to conclude that the methamphetamine conviction was an aggravated felony and thus a 16–level enhancement was warranted. Lopez–Zamora's counsel then offered an additional objection with respect to a different conviction for driving under the influence ("DUI"). The district court sustained use of the DUI conviction, but noted that the merits of the DUI argument "really [don't] matter one way or the other." Under the court's calculations, "[i]t wouldn't change the criminal history category in any case, considering I am departing for over-representation on other grounds, and as the grounds set forth by defense in their paperwork, I think the *Sanchez–Rodriguez* case."

As he had done at the first sentencing hearing, the judge granted a departure from Category V to Category IV for over-representation of criminal history and imposed a sentence of 57 months followed by three years of supervised release. The following colloquy between defense counsel and the court sheds light on the sentencing rationale:

> Mr. Antia: Your Honor, just for clarification for the record, we also submitted departures on other grounds. For example, stipulation of deportation. I don't think you exactly addressed the *Sanchez–Rodriguez* departure argument and extraordinary family circumstances.
>
> The Court: Yes. You are right. You withdrew one issue.
>
> Mr. Antia: We withdrew challenging the conviction, Your Honor.
>
> The Court: That is true. But you are right, that there was [sic] additional downward departures that were requested. A departure you contended

was warranted pursuant to *Sanchez–Rodriguez.*

> Mr. Antia: That was a case that was specifically on point.
>
> The Court: On point for the over-representation, and that is the basis that I held for the over-representation. As far as further departures, such as departure for agreeing to deportation order and cultural assimilation, extraordinary family circumstances, the court is not convinced, by a preponderance of evidence, that further departures are warranted in this case.

## II. DISCUSSION

### A. JURISDICTION TO REVIEW SENTENCING DECISION

 We review de novo the legal question of whether the sentencing court had discretion to depart from the Guidelines. *United States v. Tucker,* 133 F.3d 1208, 1214 (9th Cir.1998). We recognize that we may not review the district court's discretionary refusal to depart from the Guidelines, *United States v. Morales,* 898 F.2d 99, 103 (9th Cir.1990), and also acknowledge that "[b]ecause a sentencing court is not obligated to state its reasons for imposing a sentence within the guideline range, ... the court's silence regarding whether it had authority to depart is not sufficient indication that it believed that it lacked discretion to depart." *United States v. Brown,* 985 F.2d 478, 480 (9th Cir.1993). This case does not fall squarely within these contexts.

The difficulty here is that the district court did not refuse to depart; nor was it simply silent on the departure based on the minor nature of the underlying felony. Rather, the district court explained that it had already *granted* the *Sanchez–Rodriguez* departure for over-representation of criminal history. The specific departure in *Sanchez–Rodriguez,* however, dealt with

the minor nature of the offense, not over-representation of criminal history, although the two are indeed related. Admittedly, Lopez–Zamora has highlighted some marginal uncertainty regarding the district court's articulation of its authority to grant a downward departure. For purposes of jurisdiction, we "resolve that ambiguity in favor of [Lopez–Zamora]." *United States v. Ortega,* 358 F.3d 1278, 1279 (11th Cir.2003).

## B. FRAMEWORK FOR ANALYZING DISCRETION TO DEPART

■ The legal issue we consider is whether the district court had the authority to depart based on the nature of the underlying offense. Absent discretion to depart, any failure to consider the departure would be harmless.

The Supreme Court's now oft-cited framework for analyzing departures is our guide:

> Congress allows district courts to depart from the applicable Guidelines range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

*Koon v. United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)).

■ In determining whether the Commission has adequately taken a factor into consideration, "Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" *Id.* at 92–93, 116 S.Ct. 2035 (quoting 18 U.S.C. § 3553(b)). Four types of factors are relevant to departures: forbidden factors; encouraged factors; discouraged factors; and unmentioned factors. *See id.* at 93–96, 116 S.Ct. 2035. Forbidden fac-

tors include race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. *Id.* With the exception of the forbidden factors, the Commission "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *Id.* at 93. Encouraged factors are ones that "the Commission has not been able to take into account fully in formulating the guidelines." *Id.* at 94, 116 S.Ct. 2035. Discouraged factors, on the other hand, are "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* at 95, 116 S.Ct. 2035.

■ In *Koon,* the Supreme Court outlined the sentencing court's authority to consider each of these types of factors in deciding whether to depart:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. *If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.*

*Id.* at 95–96, 116 S.Ct. 2035 (emphasis added). When a factor is unmentioned in the Guidelines, the sentencing court must "decide whether it is sufficient to take the case out of the Guideline's heartland," keeping in mind that the Commission expected that "departures based on grounds not mentioned in the Guidelines will be

'highly infrequent.'" *Id.* at 96, 116 S.Ct. 2035.

## C. Discretion to Depart Under the 1995 Version of the Guidelines

Although our ultimate decision is governed by the 2002 Guidelines, not the 1995 version, *Sanchez–Rodriguez* is instructive with respect to the *Koon* framework. 161 F.3d at 560–63.[1]

Like Lopez–Zamora, Sanchez–Rodriguez was charged with violating 8 U.S.C. § 1326(b) by entering the United States illegally subsequent to a felony conviction. His underlying felony was a conviction for the sale of twenty dollars worth of heroin, for which he received three years probation (later revoked) and 90 days in the county jail. Under the 1995 version of the Guidelines, all aggravated felonies resulted in a 16–level enhancement. U.S.S.G. § 2L1.2(b)(2)(1995).[2] The district court departed downward nine levels on three grounds, noting that between one and four levels of the departure were for the minor nature of the underlying conviction. 161 F.3d at 559 n. 4. The government appealed the downward departure for the minor nature of the offense.

On appeal, an en banc panel of this court, relying on *Koon*, pointed out that "we cannot categorically forbid a district court from departing downward on any basis except those specifically proscribed in the Guidelines." *Id.* at 560. Because the Commission had not precluded consideration of the nature of a defendant's predicate felony, departure could not be categorically forbidden on that basis. *Id.* We noted that the 16–level enhancement applied to "any drug trafficking offense," but cautioned that a district court's inquiry does not end there. A district court must still determine whether a downward departure is appropriate: "[t]he Commission itself has made clear, a departure may be warranted even if a specific guideline 'linguistically applies' to the defendant's actions, and *even if the basis for departure is mentioned specifically in the Guidelines.*" *Id.* at 561 (citing U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b); *Koon,* 518 U.S. at 93, 116 S.Ct. 2035) (emphasis added).

We then concluded that the minor nature of the underlying felony was an unmentioned factor in the 1995 Guidelines, and thus the district court had the discretion to depart if, "after considering the 'structure and theory of both the individual guideline and the Guidelines taken as a whole,' . . . the factor takes the case out of the heartland of the Guidelines." *Id.* (quoting *Koon,* 518 U.S. at 96, 116 S.Ct. 2035). Notably, we held that "section 2L1.2, as drafted in 1995 and as applied to Sanchez–Rodriguez, does not preclude a district court from considering the nature of the aggravated offense when deciding whether to depart from the Guidelines' sentencing range." *Id.* at 563. The Guidelines have been amended twice since *Sanchez–Rodriguez,* so we next address whether the subsequent amendments eliminated the district court's discretion to depart.

---

1. Lopez–Zamora's relevant sentence was controlled by the 2002 Guidelines. Because the relevant portions of the 2002 Guidelines are identical to the 2001 version, we focus our discussion on the 2001 amendments.

2. The 1995 version of section 2L1.2 reads in full:

 § 2L1.2. Unlawfully Entering or Remaining in the United States
 (a) Base Offense Level: **8**

 (b) Specific Offense Characteristics
 If more than one applies, use the greater:
 (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
 (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by **16** levels.

## D. DISCRETION TO DEPART UNDER THE 1997 VERSION OF THE GUIDELINES

Like the 1995 version, the 1997 version of the Guidelines is inapplicable to the present case, but provides relevant context for our interpretation of the 2002 Guidelines. In November 1997, U.S.S.G. § 2L1.2 was amended to read:

§ 2L1.2. *Unlawfully Entering or Remaining in the United States*

(a) Base Offense Level: 8

(b) Specific Offense Characteristic

 (1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

 (A) If the conviction was for an aggravated felony, increase by **16** levels.

 (B) If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by **4** levels.

U.S.S.G. § 2L1.2 (1997).

Application note 5, which required certain conditions to be met before a downward departure could be applied, was also added in 1997. The text of application note 5 read:

 5. Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

*Id.* at cmt. 5 (1997).

Following the addition of application note 5, we clarified that "departure under § 2L1.2 based on the minor nature of a defendant's predicate felony *is* encouraged, but only when all three prongs of Note 5 are met. . . . [O]nly defendants that meet all three Note 5 requirements possess criminal histories that fall outside the heartland of those targeted by the 16 point enhancement under § 2L1.2(b)(1)(A)." *United States v. Machiche–Duarte*, 286 F.3d 1153, 1157–58 (9th Cir.2002). Thus, the "minor nature" factor changed from an unmentioned factor in the 1995 Guidelines to an enumerated factor in the 1997 version.[3]

The ultimate question we now turn our attention to is whether the 2001 amendments to the Guidelines gave the district court discretion to depart based on the minor nature of an underlying felony.

## E. DISCRETION TO DEPART AFTER THE 2001 AMENDMENTS

In 2001, U.S.S.G. § 2L1.2 was amended to read as follows:

§ 2L1.2. *Unlawful Entering or Remaining in the United States*

(a) Base Offense Level: 8

(b) Specific Offense Characteristic

 (1) Apply the Greatest:

 If the defendant previously was deported, or unlawfully remained in the United States, after—

 (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months;

---

**3.** The parties agree that Lopez–Zamora did not meet the preconditions of application note 5 and that he would have been ineligible for a "minor nature" departure under the 1997 Guidelines.

(ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by 16 levels;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2 (2002). Importantly, application note 5 was deleted. Thus, the explicit bar to departure in Lopez–Zamora's case was eliminated from the Guidelines as of 2001.

The Sentencing Commission explained at length its reasons for amending § 2L1.2 and deleting application note 5:

This amendment responds to concerns raised by a number of judges, probation officers, and defense attorneys, particularly in districts along the south-west border between the United States and Mexico, that § 2L1.2 (Unlawfully Entering or Remaining in the United States) sometimes results in disproportionate penalties because of the 16–level enhancement provided in the guideline for a prior conviction for an aggravated felony. The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16–level enhancement as a defendant previously convicted of

simple assault. The Commission also observed that the criminal justice system has been addressing this inequity on an *ad hoc* basis in such cases by increased use of departures.

This amendment responds to these concerns by providing a more graduated sentencing enhancement of between 8 levels and 16 levels, depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant. In doing so, the Commission determined that the 16–level enhancement is warranted if the defendant previously was deported, or unlawfully remained in the United States, after a conviction for certain serious offenses, specifically, a drug trafficking offense for which the sentence imposed exceeded 13 months, [and certain other specified offenses]. Other felony drug trafficking offenses will receive a 12–level enhancement. All other aggravated felony offenses will receive an 8–level enhancement.

This amendment also deletes an application note providing that a downward departure may be warranted based on the seriousness of the offense if the 16–level enhancement applied and (1) the defendant has previously been convicted of only one felony offense; (2) such offense was not a crime of violence or firearms offense; and (3) the term of imprisonment for such offense did not exceed one year. The Commission determined that the graduation of the 16–level enhancement based on the seriousness of the prior conviction negated the need for this departure provision. As a result, this amendment may have the indirect result of reducing the departure rate for cases sentenced under § 2L1.2. In addition, this amendment renders moot a circuit conflict regarding whether the three criteria set forth in the application note are the exclusive basis for a downward departure from the 16–level en-

hancement. *Compare United States v. Sanchez–Rodriguez*, 161 F.3d 556 (9th Cir.1998) (holding that Application Note 5 to § 2L1.2 does not limit the circumstances under which a downward departure from the 16–level enhancement is warranted);[4] and *United States v. Alfaro–Zayas*, 196 F.3d 1338 (11th Cir.1999) (same), *with United States v. Tappin*, 205 F.3d 536 (2d Cir.2000) (holding that a defendant must satisfy all three criteria set forth in Application Note 5 in § 2L1.2 to receive a downward departure from the 16–level enhancement). U.S.S.G., supp. to app. C, amdt. 632 (2001).

As is evident from the text, the 2001 amendments to the Guidelines made significant changes to the § 2L1.2 enhancement. While the 1997 version of the Guidelines provided specific prerequisites for eligibility for a § 2L1.2 departure based on the nature of the underlying offense, the 2001 amendments eliminated those prerequisites. Instead, the 2001 amendments account for the seriousness of the underlying offense by implementing a graduated system of enhancements. The Commission took the nature and seriousness of the underlying offense into consideration by making a distinction between more serious offenses, which continue to receive a 16–level enhancement, and more minor ones, which receive lesser enhancements. It is beyond dispute that Lopez–Zamora's drug trafficking felony still qualifies for a 16–level enhancement under the amended Guidelines. What is at issue is whether a departure due to the minor nature of the offense is nonetheless permissible.

■ Under the *Koon* framework, the fact that the Commission accounted for the nature of an offense in determining the level of enhancement in the typical case does not mean that there may never be a departure based on the nature of an offense. Although departures based on the nature of the offense will be rare given that the Commission explicitly took this factor into account in the revised Guidelines, we can not categorically forbid the district court from departing on that basis. *See* U.S.S.G. ch. 1, pt. A(4)(b) (with the exception of the forbidden factors, "the Commission does not intend to limit the kinds of factors, *whether or not mentioned anywhere else in the guidelines*, that could constitute grounds for departure in an unusual case") (emphasis added).

Our conclusion follows from the analysis dictated by *Koon*. We first consider whether the nature of the offense is a forbidden factor, which it is not. Nor can it be said that it is either an encouraged or discouraged factor, except to the extent that it overlaps to some degree with departure for over-representation of criminal history, which is an encouraged factor. *See* U.S.S.G. § 4A1.3(e). And finally, it cannot be fairly said that the seriousness of the crime is unmentioned as, unlike in the 1995 Guidelines, the graduated approach speaks directly to this issue.

■ We are thus left with a factor that is both referenced and taken into account by the Guidelines. Like our sister circuits, we divine from *Koon* that, "if a factor is neither encouraged nor discouraged, but listed by the Commission as one appropriately considered in applying an adjustment to the guidelines, a court may depart only if the factor is present to such an excep-

---

4. The Commission's citation to *Sanchez–Rodriguez* is misplaced as that case does not address application note 5, which was not added to the Guidelines until 1997. *Sanchez–Rodriguez* dealt with the 1995 version of the Guidelines. Whether the Commission "blew it," as the concurrence suggests (concurrence at 17508), or was simply misguided in its reference to *Sanchez–Rodriguez*, we are still left with the same task—reconciling *Koon* and the specific language of the Guidelines and the amendments.

tional or extraordinary degree that it removes the case from the heartland of situations to which the guideline was fashioned to apply." *United States v. Brock,* 108 F.3d 31, 35 (4th Cir.1997); *see also United States v. Bradstreet,* 207 F.3d 76, 82 (1st Cir.2000) (holding that post-sentencing rehabilitation, which was a mentioned factor, may be a ground for departure "in a sufficiently exceptional case"); *United States v. Fagan,* 162 F.3d 1280, 1284 (10th Cir.1998) (holding that while remorse is a factor taken into account by the Guidelines, "it is a permissible factor for departure if it is present to some exceptional degree"); *United States v. Rhodes,* 145 F.3d 1375, 1383 (D.C.Cir.1998) (explaining that post-conviction rehabilitative efforts is a factor taken into account by the Guidelines, but a district court may depart when it is present "to such an exceptional degree that the situation cannot be considered typical of those circumstances in which the acceptance of responsibility adjustment is granted"); *United States v. Sally,* 116 F.3d 76, 80 (3d Cir.1997) (same).[5]

Thus, where a factor is both referenced and taken into account, the majority of the circuits reject the categorical ban on downward departures. In contrast, the Second and Eleventh Circuits adopt a categorical approach with respect to the minor nature issue. *See United States v. Stultz,* 356 F.3d 261, 268 (2d Cir.2004) ("[W]e hold that the Commission intended the 16–level enhancement to apply to all felony convictions for trafficking controlled substances that resulted in imprisonment for a period greater than 13 months."); *United States v. Ortega,* 358 F.3d 1278, 1280 (11th Cir. 2003) ("Because the [difference in the severity among aggravated felonies] was adequately taken into account by the Sentencing Commission in formulating the

2001 amendments to § 2L1.2, the district court did not have the authority to depart downward based on this factor.") Those cases do not, however, endeavor to reconcile their categorical approach with *Koon's* opposite directive or with the longstanding rationale of the other circuits. Indeed, it is curious that those circuits do not analyze the departure factor within the *Koon* framework, which, of course, remains good law. Thus, we part company with those two circuits to the extent they have adopted a categorical rule banning downward departures based on the minor nature of the offense.

The policy statement for § 5K2.0, entitled "Grounds for Departure," explicitly acknowledges that sentencing courts retain discretion to depart. The statement says, in relevant part:

> The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, *the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (e.g.,* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive.

U.S.S.G. § 5K2.0 (2002) (emphasis added). Thus, neither the Guidelines nor *Koon* categorically prohibit a court from departing

---

**5.** We note that the Guidelines have since been amended so that departure based on post-sentencing rehabilitative efforts, even if ex-

ceptional, is now expressly prohibited. *See* U.S.S.G. § 5K2.19 (2003).

based on a factor that is already taken into account by the applicable guideline.

■ Here, the Sentencing Commission specifically considered the wide range of aggravated felonies in crafting a graduated sentencing scheme. And, with respect to drug trafficking offenses, it made the judgment that the threshold of thirteen months imprisonment would trigger the 16–level enhancement. Without totally eviscerating judicial discretion, the Commission nonetheless crafted fairly broad boundaries around the heartland. The nature of the drug offense is pegged to the sentence imposed, not the amount or type of drug, although there is often a relationship among those factors.

As the Commission noted, the 2001 amendments will have the effect of decreasing departures. But a decrease in departures is not the same as no departure under any circumstances—it does not mean that a minor-nature departure can never be warranted. Where "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present," district courts retain discretion to depart. *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. To be sure, the 2001 amendments significantly restrict the district court's discretion, but there is a significant difference between restriction and absolute prohibition.

### F. REMAND UNNECESSARY

Even with the clarification that a departure for the minor nature of the prior felony is permissible in the extraordinary case, no remand is necessary here because the issue "did not affect the district court's selection of the sentence imposed." *United States v. Mendoza,* 121 F.3d 510, 513–14 (9th Cir.1997).

■ The district court imposed the same sentence at both sentencing hearings. At the second hearing, it took the minor nature of the offense into account in granting a departure for over-representation of criminal history and, indeed, cited to *Sanchez–Rodriguez.*[6] In discussing other requested departures, the district court noted that "[the] circumstances of the defendant are very similar to so many others that we have in this district." The court articulated no further circumstances for a departure nor did it express any discomfort with the length of the sentence. Finally, the court specifically stated that "the sentence imposed was sufficient but not greater than necessary to reflect the seriousness of the offense committed by the defendant, to afford adequate deterrence to criminal conduct." Although this language is taken virtually verbatim from 18 U.S.C. § 3553, we take the court's statement at face value and decline to read in some fudge factor for extraordinary circumstances. Beyond what the court already factored in, there is nothing extraordinary or exceptional about Lopez–Zamora's case, and thus we affirm the district court's imposition of a 57–month sentence, coupled with supervised release.

### G. NO BLAKELY CHALLENGE

■ After submission of this case, Lopez–Zamora raised a challenge to the 16–level enhancement pursuant to *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Although the application of *Blakely* to the guidelines is presently before the Supreme Court, we need not await that decision. Even if *Blakely* applies, Lopez–Zamora's claim fails. Under *Blakely,* the fact of a prior conviction need not be proved beyond a

---

**6.** Although we liberally construed Lopez–Zamora's challenge for purposes of jurisdiction, once we have jurisdiction to address the de-

parture, it is incumbent on us to analyze the judge's comments in context of the overall sentencing decision.

reasonable doubt. *See United States v. Quintana–Quintana*, 383 F.3d 1052, 1053 (9th Cir.2004) ("We have repeatedly acknowledged that *Apprendi [v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] carves out an exception for the fact of a prior conviction."). *See also United States v. Smith*, 390 F.3d 661 (9th Cir.2004) (applying, post-*Blakely*, the modified categorical approach) (Dec. 3, 2004).

 Under the 2002 Guidelines, the 16–level enhancement applies to a conviction for a felony that is a drug-trafficking offense for which the sentence imposed exceeded 13 months. U.S.S.G. § 2L1.2. In a plea hearing Lopez–Zamora admitted to attempting to sell methamphetamine, and attempting to sell methamphetamine is a drug trafficking offense. *See* 8 U.S.C. § 1101(43) (defining aggravated felony as including a drug trafficking crime as defined in 18 U.S.C. § 924(c)(2)) (defining drug trafficking crime as any felony punishable under the Controlled Substances Act); 21 U.S.C. § 846 (Controlled Substances Act criminalizes attempts). Because the sentencing court can impose a sentence based on a defendant's prior conviction, the district court had the authority to enhance Lopez–Zamora's sentence regardless of the requirements that may arise if *Blakely* applies to the Guidelines.

**AFFIRMED.**

BYBEE, Circuit Judge, concurring in the judgment.

I am unable to join the majority opinion because, in my view, the 2001 amendments to the Sentencing Guidelines squarely address Lopez–Zamora's situation. The district court did not have discretion to grant the downward departure Lopez–Zamora sought and thus did not err when it declined to grant it. Hence, I agree with the majority that the judgment should be affirmed, but I disagree with the majority's construction of the 2001 Amendments to § 2L1.2.

The 2001 amendments do not leave us the discretion the majority finds. The majority's reading of the changes in the Commission's instructions from the 1995 Guidelines to the 1997 Guidelines and the 2001 Guidelines follows a twisted path. I take a very different set of inferences from that history, so I am going to recap it here, showing where my perspective diverges from the majority.

Under the 1995 Guidelines, we were instructed to increase the base offense for unlawfully entering or remaining in the United States if the defendant was deported after conviction for a felony. Section 2L1.2 drew two distinctions: (1) if the defendant had been deported after an aggravated felony, increase the base offense level by 16 levels; (2) if convicted of any other felony (other than a violation of the immigration laws) increase by only four levels. U.S.S.G. § 2L1.2(b)(1), (2) (1995). The term "aggravated felony" encompassed a broad array of crimes,[1] and the term failed to account for substantial differences in the nature and quality of aggravated felonies for which one could have been convicted, such as differences between murder and assault. We recognized this in our decision in *United States v. Sanchez–Rodriguez*, 161 F.3d 556 (9th Cir. 1998) (en banc). Quoting *Koon v. United States*, 518, U.S. 81, 109, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), we held that "we must ask only 'whether the Commission has proscribed, as a categorical matter, consideration of the factor' at issue." *Sanchez–Rodriguez*, 161 F.3d at 560. We rec-

---

1. A comment defined "aggravated felony" as murder, illicit trafficking in a controlled substance, drug trafficking, illicit trafficking in firearms or destructive devices, money laundering, and any other crime of violence punishable by at least five years. U.S.S.G. § 2L1.2 n. 7 (1995).

ognized that "aggravated felony" included trafficking in a controlled substance, but we found that "the Guidelines were silent as to what consideration, if any, the district court should give to the nature of the previous controlled substance offenses." *Id.* at 562. Accordingly, we held that the district court did not abuse its discretion when it held that "a $20 heroin sale is different in kind and degree from, or outside of the norm, of other offenses, including murder and large-scale drug operations, that similarly trigger the 16-level enhancement." *Id.* at 561.

If Lopez–Zamora were subject to the 1995 Guidelines, he could seek a downward departure under *Sanchez–Rodriguez.* Like Sanchez–Rodriguez, he could argue that his conviction for transportation of methamphetamine, for which he received a sentence of four years, "is different in kind and degree from, or outside of the norm, of other offenses, including murder and large-scale drug operations." I cannot determine whether any district court would have granted such a departure, but Lopez–Zamora could properly make such an argument after *Sanchez–Rodriguez.*

We would have reached a different conclusion, however, under the 1997 version of the Guidelines. Section 2L1.2(b)(1) was not amended in any way that seemed to affect our analysis in *Sanchez–Rodriguez.*[2] That section continued to distinguish between an aggravated felony (which still received a 16-level enhancement) and other felonies (which still received a 4-level enhancement). U.S.S.G. § 2L1.2(b)(1) (1997). What was different in the 1997 version was a new Application Note, which read:

> 5. Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A)

applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

In *United States v. Machiche–Duarte,* 286 F.3d 1153 (9th Cir.2002), we held that the 1997 amendments altered the Section 2L1.2 scheme on which *Sanchez–Rodriguez* was based. A defendant still might seek a downward departure, but "if and only if all three requirements [in Application Note 5] are met." *Id.* at 1156. After *Machiche–Duarte,* the Guidelines prescribed the sentence and must be followed unless the defendant could demonstrate that he had satisfied each of the three criteria listed in Application Note 5.

In contrast to his treatment under the 1995 Guidelines, under the 1997 version, Lopez–Zamora could not have sought a downward departure, as the majority noted. Slip op. 17493 n.3. Indeed, it is questionable whether Lopez–Zamora could have satisfied any one of the three prerequisites. Thus, the 1997 Guidelines treated Lopez–Zamora more severely than the 1995 Guidelines and would have eliminated any possibility of him receiving a downward departure.

To this point, my reading of the Guidelines is largely consonant with the majority opinion. But, according to the majority, the 2001 amendments to Section 2L1.2 restored the district court's power to issue a downward departure in Lopez–Zamora's case. The majority reads the 2001 amendments as backing off the 1997 version of the Guidelines. Accordingly, the majority

---

**2.** In fact, we considered the 1997 amendment in *Sanchez–Rodriguez* but concluded that "[t]he new amendment does not affect our

decision," which was based on the 1995 Guidelines. 161 F.3d at 563 (footnote omitted).

finds that the district court's failure to consider Lopez–Zamora for a downward departure under *Sanchez–Rodriguez* was error, although it ultimately concludes that it was harmless error. With all due respect, I cannot read the 2001 amendments in this way.

The 2001 amendments, unlike the 1997 amendments (which only amended the comments to § 2L1.2) amended Section 2L1.2 itself. Under Section 2L1.2(b)(1), the district court is instructed to "Apply the Greatest: (1) If the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is (I) a drug trafficking offense for which the sentence imposed exceed 13 months ..., increase by 16 levels." U.S.S.G. § 2L1.2(b)(1)(A) (2001). By contrast, if the "conviction for felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels." If the defendant has been convicted of an aggravated felony not enumerated in (A), then the base offense level is increased by eight levels; convictions for other felonies or three or more misdemeanors, increase by four levels. *Id.* § 2L1.2(b)(1)(B), (C), and (D) (2002).

The 2001 amendments did three things. First, they changed the rule itself, not just the comments. Second, for the first time, the rule distinguished between aggravated felonies and a list of enumerated felonies, which included drug trafficking. Third, the rule drew a distinction among drug trafficking offenses based on the length of the sentence imposed. Drug trafficking offenses are treated differently from other felonies; within the class of drug trafficking offenses, an offense will receive either a 16– or a 12–level enhancement based on whether the sentence was greater or less than 13 months.

In addition, the 2001 amendments eliminated Application Note 5, which was the basis for our decision in *Machiche–Duarte.* But the Commission added an explanatory note (which is quoted at length in the majority opinion, *supra,* at op. 1093–95). The Commission explained that the amendment addressed concerns over the disproportionate penalties resulting from "the breadth of the definition of 'aggravated felony,' " which did not distinguish, for example, between murder and simple assault. U.S.S.G. Supp., App. C, Amend. 632 (2001). Concerned that the courts had "been addressing this inequity on an *ad hoc* basis" through departures, the Sentencing Commission was "respond[ing] to these concerns by providing a more graduated sentencing enhancement depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." *Id.* Significantly, "the Commission determined that the 16–level enhancement is warranted if the defendant previously was deported, or unlawfully remained in the United States, after a conviction for certain serious offenses, *specifically, a drug trafficking offense for which the sentence imposed exceeded 13 months.*" *Id.* (emphasis added). The Commission noted that it was deleting Application Note 5 because "the graduation of the 16–level enhancement based on the seriousness of the prior conviction *negated the need for this departure provision.*" With this amendment, the Commission wrote, "this amendment may have the indirect result of reducing the departure rate for cases sentenced under § 2L1.2." *Id.* (emphasis added).

Inexplicably, the Commission added the following:

In addition, this amendment renders moot a circuit conflict regarding whether the three criteria set forth in the application note are the exclusive basis for downward departure from the 16–level enhancement. *Compare United States v. Sanchez–Rodriguez,* 161 F.3d 556 (9th

Cir.1998) (holding that Application Note 5 to § 2L1.2 does not limit the circumstances under which a downward departure from the 16–level enhancement is warranted); and *United States v. Alfaro–Zayas*, 196 F.3d 1338 (11th Cir.1999) (same), *with United States v. Tappin*, 205 F.3d 536 (2d Cir.2000) (holding that a defendant must satisfy all three criteria set forth in Application Note 5 in § 2L1.2 to receive a downward departure from the 16–level enhancement). U.S.S.G., Supp., App. C, Amend. 632 (2001). The majority notes, *supra*, op. at 1095 n. 4, that the reference to *Sanchez–Rodriguez* is "misplaced." It is not misplaced; it is demonstrably wrong. Not only did *Sanchez–Rodriguez* not deal with Application Note 5, but in *Machiche–Duarte* we expressly adopted the Second Circuit's analysis in *Tappin* that the three criteria in Note 5 are prerequisites to a departure. *See* 286 F.3d at 1158 ("We agree completely with the analysis contained in the *Tappin* opinion"). The view the Commission attributed to us was obviously incorrect. The confusion may stem from the fact that the Eleventh Circuit in *Alfaro–Zayas* appeared to accept the three criteria in the 1997 amendments as prerequisites to a downward departure, but then went on to say that a district court could still determine if the case was removed from the heartland of the Sentencing Guidelines, proposition for which the court cited our decision in *Sanchez–Rodriguez*. *Alfaro–Zayas*, 196 F.3d at 1342–43.[3]

The Commission simply blew it. Its *"Compare"* citation should have compared the Eleventh Circuit's opinion in *Alfaro–Zayas* with the Second Circuit's decision in *Tappin* and our decision in *Machiche–*

*Duarte.* Had it done so, the purpose for its 2001 amendments would have been manifest: it was to clear up any lingering doubt whether the Commission intended to provide sufficient guidance on how to treat "certain serious offenses, specifically, drug trafficking for which the sentence imposed exceeded 13 months." U.S.S.G., Supp., App. C, Amend. 632 (2001). The result was a "more graduated sentencing enhancement" in which the Commission went to the trouble of specifying the base level enhancements for enumerated felonies. The Commission could not have been more clear: If Lopez–Zamora had been convicted of drug trafficking and he received a sentence of more than 13 months, then he receives a 16–level enhancement. If he was convicted of drug trafficking and he received a sentence of 13 months or less, then he receives a 12–level enhancement. At least with respect to drug trafficking, we no longer have to worry whether the Commission had given "consideration . . . to the nature of the previous [drug]˙offenses" (*Sanchez–Rodriguez*, 161 F.3d at 562); after the 2001 amendments, there was no longer any "need for [a] departure provision." U.S.S.G., Supp., App. C, Amend. 632 (2001). On this point, at least, the Commission has spoken plainly.

In light of this history, I cannot understand the majority's inference that when Application Note 5 was eliminated, "the explicit bar to departure in Lopez–Zamora's case was eliminated from the Guidelines." Op. at 1094. That seems exactly backwards to me. The Commission was not *restoring* the option of departure. It was *eliminating* it. Application Note 5 was deleted because it had not been sufficiently clear to prevent a conflict between

**3.** The Commission may also have read our discussion in *Sanchez–Rodriguez* whether Application Note 5 was "clarifying" or "substantive." We expressed the view that the amendment was clarifying, although we also stated that the amendment "[did] not affect our decision." *Id.* at 563 (footnote omitted). In *Machiche–Duarte* we rejected our comments on Application Note 5 in *Sanchez–Rodriguez* as "dictum." 286 F.3d at 1157.

the Eleventh Circuit and the Second and Ninth Circuits. The Commission did not simply delete Application Note 5; it rewrote Section 2L1.2 itself, and it did not do so to reinvigorate *Sanchez–Rodriguez*. The Commission did not amend the Guidelines to give us greater discretion to depart from the Guidelines, but to cabin our discretion in this developing area.

I am joined in my conclusion by, ironically, the Second and Eleventh Circuits. In *United States v. Stultz*, 356 F.3d 261 (2d Cir.2004), the defendant argued that the court should take into account that his prior drug offenses involved marijuana, and not more dangerous drugs. The Second Circuit concluded that the district court did not have discretion to issue a downward departure. Citing the 2001 amendments, the court observed that the Commission had "explicitly addressed the severity of prior convictions and specified how such convictions would affect sentencing. In light of the conscious choices the Commission made, the absence of any distinction between various types of controlled substances is plain." *Id.* at 267. To sanction distinctions based on the nature of the drugs would "contradict[ ] the clear language of the Guidelines." *Id.* at 267. The court concluded that "the Commission intended the 16–level enhancement to apply to all felony convictions for trafficking controlled substances that resulted in imprisonment for period greater than 13 months." *Id.; see also United States v. Leiva–Deras*, 359 F.3d 183 (2d Cir.2004). Similarly, in *United States v. Ortega*, 358 F.3d 1278 (11th Cir.2003) (per curiam), the Eleventh Circuit rejected the defendant's argument that the district court could base a downward departure on differences in the severity of aggravated felonies. Citing the 2001 amendments, the court found that the Commission had "determined that a drug trafficking crime for which the sentence exceeded thirteen months was serious enough to warrant a sixteen level en-

hancement." Accordingly, the "mitigating circumstance that Ortega seeks to apply was adequately taken into account by the Sentencing Commission in formulating the 2001 amendment." *Id.* at 1280; *see also id.* at 1280 n. 4 (noting that the Commission "specifically deleted the application note included in the 2000 Sentencing Guidelines that previously allowed for downward departures based upon seriousness of the aggravated felony"). The Commission's 2001 amendments successfully brought the Second and Eleventh Circuits back in line.

Regretfully, we have strayed. The majority opinion recognizes that the Commission has been ever-more specific in its guidance. Nevertheless, the majority concludes that the 2001 amendments did not "totally eviscerat[e] judicial discretion" because although "the 2001 amendments will have the effect of decreasing departures ... a decrease in departures does not mean that a minor nature departure can never be warranted." Op. at 1097. The majority thus concludes that the 2001 amendments, while more focused, had the effect of resurrecting *Sanchez–Rodriguez* rather than eviscerating it.

The Commission stated, as the majority properly points out, that the 2001 amendments might reduce the number of departures. But that observation alone cannot resurrect *Sanchez–Rodriguez*. That case was specifically addressed to the claim that a district court may "consider[ ] the nature of the aggravated offense when deciding whether to depart from the Guidelines' sentencing range." 161 F.3d at 563. But there are other grounds noted by the Commission, which do not involve an inquiry into the nature of the offense that might suggest a departure because the defendant's criminal history over-represents the seriousness of that history. The Commission has, for example, specifically suggested that a significant passage of time be-

tween convictions and no other evidence of criminal conduct in the intervening period might permit a downward departure. U.S.S.G. § 4A1.3 (2001); *but see Stultz,* 356 F.3d at 268–69 (rejecting passage of time as a basis for departure under § 2L1.2).

In sum, in the 2001 amendments, the Commission fully considered the nature of the offenses that should receive an enhancement. It specifically singled out drug trafficking and specifically identified drug traffickers who received sentences greater than 13 months. At some point, unless we demand that the Sentencing Commission use some formulaic terms to identify when it really means what it plainly says, we must admit that the Commission has constrained our discretion. To do otherwise, and to continue to permit a *Sanchez–Rodriguez* inquiry into the nature of a drug trafficking offense, risks using *Sanchez–Rodriguez* as a device for collaterally attacking a prior sentence in an effort to avoid its present consequences. I believe the Sentencing Commission intended to avoid that result. I join the court's judgment but, respectfully, I cannot join its opinion.